IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF NEW MEXICO

**MIGUEL LUJAN,** *PRO SE,*

    **Plaintiff,**

**v.**

                         **No. 1:15-cv-00093-KG-LF**

**CITY OF ESPAÑOLA, ESPAÑOLA POLICE
DEPARTMENT, OFFICER LUGINBUHL
AND OFFICER MARTINEZ,**

    **Defendants.**

## DEFENDANTS' *MARTINEZ* REPORT

**COME NOW** Defendants herein, by and through their counsel of record Basham & Basham P.C. (Mark A. Basham and Stephen C. Ross) and submit the foregoing *Martinez* report as directed by the Court:

### I.  INTRODUCTION

Plaintiff is incarcerated at the Guadalupe Correction Facility and filed the instant action *pro se*.  The Court has ordered Defendants to file a *Martinez* report concerning the allegations in the Complaint.  In *Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit Court of Appeals held that a District Court may order that Defendants investigate the incident which is subject to a *pro se* Complaint and submit a report.  The report is intended to assist the Court to determine whether a meritorious claim exists.   This report is intended to serve that function; additional information is needed to completely address the Court's inquiry.  *See* § IV(D), at page 7-8, below.

## II.  FACTS

This case arises out of an incident that occurred after midnight on April 3, 2014 in Espanola, New Mexico.  ESP000001-16 (Uniform Incident Report).  On or about 12:45 a.m., Mr. Frank Valencia, who resides at 1017 W. Bond Street, in Espanola, was alerted to the sounds of an intruder.  ESP0000010-16.   A person he recognized as his neighbor, Plaintiff herein, had gained access to an enclosed patio area by breaking the door, and was attempting to gain access to the residence by breaking the windows and a door leading from the patio into the residence.  ESP000011 (Statement of Frank Valencia, the victim), ESP000015 (Narrative of Officer Jose Martinez).  The intruder was informed by Mr. Valencia that 9-1-1 had been called and that police were on the way, but the Plaintiff continued trying to gain access to the residence and behaved erratically (picking items up as if he were going to steal them, and then putting them back).  ESP000011.  He kept falling down on the patio, "laying there for minutes."  ESP000011.  Mr. Valencia kept the intruder from gaining access to the residence by holding the door shut.  ESP000011.  Eventually, Plaintiff moved to the back of the residence where loud sounds were heard which Mr. Valencia interpreted as the Plaintiff attempting to break into his vehicles.  ESP000011.  The incident was recorded by a 9-1-1 operator; it was a scary, desperate encounter.  *See* ESP000017 (9-1-1 tape).

The police arrived.  ESP000003.  The Officers responding were Officer David W. Luginbuhl and Officer Jose R. Martinez.  ESP000002.  Officer Luginbuhl was advised by Mr. Valencia that the suspect, Plaintiff, had fled north behind the residence.  The Officer jumped the rear fence and pursued the suspect who he found inexplicably "… lying in the middle of Calle Vigil …"  ESP000003 (Incident Narrative, 14-04-017).  As the Officer approached Plaintiff, Plaintiff got up and started running south around a residence at 1010 Calle Vigil.  A map of the

vicinity is attached for the convenience of the Court.  *See* ESP000022.  The Plaintiff was advised to stop; he laid down and said "I've been shot. I've been shot." ESP000003.  Plaintiff had not been shot, although his hands were cut, apparently from breaking glass at the Valencia residence.  ESP000003.  Even though he was advised to remain still, Plaintiff got up and started walking east on Calle Vigil.  ESP000003.  He was ordered to stop several times, but did not comply; he was warned that if he continued, the Officer would deploy his Taser, but Plaintiff continued.  He was Tased at that point; one probe hit him in the left arm around the elbow and the other hit him on the left side.  ESP000003; ESP000006-7 (Use of Force Report).  Plaintiff fell to the ground, and was advised to remain there until the ambulance arrived.  ESP000003.  He disregarded the instruction and attempted to get up, whereupon he was Tased a second time.  ESP000003.

When the ambulance arrived to check on him, the Plaintiff refused medical attention; he was placed in handcuffs, assisted to a standing position, and taken to a police vehicle.  ESP000003.  A struggle then ensued to get him into the car; he stiffened up and began yelling and refused to enter.  ESP000003-4.  The officers worked to get him in, but were unable to do so, given his resistance.  *Id.*  Eventually, after being warned that he would be Tased if he continued to struggle, he continued to struggle and was "drive stunned" (where the Taser is used directly, instead of through the probes). ESP000004.  The drive stun apparently had little or no effect, and he still could not be placed in the vehicle.  He broke free of the officers and ran west on Calle Vigil.  ESP000015.  One of the paramedics was able to grab Plaintiff long enough for the Officer to catch up.  ESP000015.  He was brought back to the vehicle, and once again struggled and attempted to escape.  ESP000015.  After a continuing struggle, he was placed in the vehicle, but refused to put his feet inside and was drive stunned a second time.  ESP000015-16.  Officer Martinez opened the other door, and attempted to assist by pulling him towards that side of the

3

vehicle. ESP000016. But Plaintiff pushed with his feet, throwing the Officer off balance and both fell to the ground on the other side of the police car, where he was once again restrained. ESP000016. Another struggle then ensued with Plaintiff; he became unresponsive, and the paramedics immediately began working on him as the Plaintiff had no pulse. One the officers drove the ambulance to the hospital while the paramedics worked on Plaintiff. ESP000016.

Plaintiff recovered from the medical emergency. The physician who treated Plaintiff advised the Officers that Plaintiff had overdosed on Methamphetamine, Cocaine and Heroin, all of which were found in his blood. ESP000016. For several months, Defendants have been unsuccessfully attempting to verify through the medical records at the hospital and with Espanola Valley EMS that this statement is accurate. *See* below, at § IV(D). At the hospital, the Officers located four 12 mg/3M and eight 8 mg/2 mg opened Suboxone films rolled in a plastic bag on Plaintiff's person. There was also a green pill and a folded paper with ground up pills inside. ESP000023-24, 25-26.

Plaintiff was convicted of the crimes of breaking and entering. ESP000027-39. Charges of resisting, evading or obstructing a police and possession were dismissed as a result of a plea agreement. *Id*. Plaintiff is now incarcerated pursuant to the Judgment.

### III. CONTENTIONS OF THE PLAINTIFF

#### A. Plaintiff's Complaint

Plaintiff filed his Complaint in this Court on February 2, 2015 against the City of Española, the City Police Department, and the two officers that participated in the incident described above, Officers Luginbuhl and Martinez. Plaintiff alleged the officers used excessive force and deliberate indifference resulting in physical and emotional injuries. Complaint, § B, page 3. Plaintiff alleges he was "walking down the road" when police officers stopped him and

4

required that he raise his hands.  He claims that when he complied, the officers Tased him.  After being handcuffed, Plaintiff claims that he was Tased until his heart stopped.  Complaint, § B, page 4.   Plaintiff claims that the Tasing was "covered up" and the Officers made the false statement that Plaintiff had suffered a drug overdose.  Plaintiff claims that he was wrongfully accused of crimes, but the charges were eventually dismissed.

Plaintiff's Complaint contains three separate counts.  The first alleges cruel and unusual punishment under the Eighth Amendment for the Tasing.  The second count alleges deliberate indifference.  The third alleges violations of the Due Process Clause and the Fifth and Fourteenth amendments for the alleged failure to "adhere to state and federal laws."  Plaintiff alleges that Tasing is not appropriate "once the person complies [with] police commands."  He also states that, as a matter of law "Tazing [sic] is not allowed once a person is handcuffed."  Complaint, § C, pages 5-6.

### B. Defendants' Response to the Allegations

The factual and legal contentions in the Complaint are mostly unsupported by the record of the incident.  The record strongly suggests that Plaintiff had broken into a home and fled when Officers arrived and was not on a "walk down the road," as he suggests.  The record also strongly suggests that Plaintiff in fact overdosed on Methamphetamine, Cocaine and Heroin and that the drugs in his system were the cause of his erratic behavior, his refusal to follow commands of the Officers, the struggle and resistance to being placed on the police car, the erratic behavior at the residence at 1017 W. Bond Street, and his eventual collapse of a drug overdose during the struggle that ensued.  ESP000003-4, 10-11, and 16.  The fact that Plaintiff was having difficulties remaining standing at the Valencia residence prior to Tasing by the Officers appears to be significant also.  ESP000011.  If this is confirmed through examination of the records at the

Española Hospital and Española Valley EMS, the fact that Plaintiff was Tasered twice and drive stunned twice more during a lengthy struggle is not an insignificant fact, but justified given the circumstances and unrelated to his medical episode.  Moreover, as described in § V, below, the Tasering was justified under applicable Tenth Circuit precedent.  *See* page 9, herein.

The first two Counts of the Complaint fail to state a claim: the first Count alleges cruel and unusual punishment under the Eighth Amendment, but Plaintiff was not incarcerated during the incident and the Eighth Amendment claim must be dismissed; the second Count alleges deliberate indifference, apparently under the Eighth Amendment also, and that Count must be dismissed.  The third Count fails under applicable jurisprudence under the Fourth and Fourteenth Amendments.  *See* § V, below, at pages 8-11.

## IV.  FACTS NEEDED TO RESOLVE OUTSTANDING CLAIMS

**A.  Names of Persons Who Dealt Directly With Plaintiff During the Incident In Question:**

1. Officer David W. Luginbuhl
2. Officer Jeff R. Martinez
3. Mr. Frank Valencia
4. Paramedic 1 (name unknown at the present time)
5. Paramedic 2 (name unknown at the present time)

**B.  Index and Description of all Records or Documents Whose Contents Pertain to Plaintiff's Claims.**

1. Uniform Incident Report, Incident No. 14-04-017.  ESP000001-16.

    a. Incident Narrative of Officer Luginbuhl.  ESP000003-4.
    b. Use of Force Report.  ESP000006-7.
    c. Statement of Frank Valencia (victim).  ESP000010-11.
    d. Case Supplement of Officer Martinez.  ESP000015-16.

    2. Summary of 9-1-1 Tape of Call Concerning Breaking and Entering (entire tape will be provided to the Court separately).  ESP000017-21.

    3. Map of the vicinity of 1017 W. Bond Street.  ESP000022.

    4. Evidence Receipt, Espanola Police Department.  ESP000023-24.

    5. Forensic Laboratory Evidence Receipt.  ESP000025-26.

    6. Plea Agreement and Conviction of Plaintiff for Breaking and Entering arising from the incident of April 3, 2014.  ESP000027-39.

    7. Notice of Claim of Plaintiff, dated July 30, 2014.  ESP000040-53.

    8. Convictions of Plaintiff in a variety of charges going back to 2006, including Resisting or Obstructing a Police Officer, Felon in Possession, Breaking and Entering, Furnishing Drugs or Liquor to a Prisoner, and Bringing Contraband Into a Prison.  ESP000054-84.

    9. Personnel Policy, City of Espanola.  ESP000085-148.

    10. Taser Use Policy, City of Espanola Police Department.  ESP000149-152.

**C. Copies of Complaints Plaintiff filed with Defendants Concerning the Incident.**

    1. Notice of Claim, filed July 17, 2014.  ESP000040-53.

**D. Copies of Medical Records Pertaining to Plaintiff's Medical Care.**

The Court granted an additional thirty days to file the *Martinez* report so that Defendants could gather the medical records and ambulance reports from Espanola Hospital and Espanola Valley EMS.  Despite the Court's courtesy, the medical records are still not in hand.  Several HIPPA-compliant medical releases have been signed by Plaintiff (who has been very patient and helpful through this process) which provide consent for Defendants to gather medical records related to this incident from Española Hospital and the paramedics responding to the incident. Thus far, the Hospital has refused to provide the medical records pursuant to the Releases, citing various technical issues in the form of release (Defendants used the Court's HIPPA-compliant

release, then a copy of its usual medical release, then subpoenaed the information, and finally, the Hospital's own form of release).  The hospital and EMS records will be gathered and provided to the Court in a supplement to this report.  If the Hospital continues to refuse to provide the requested information, the Defendants may apply to the Court for a Court-issued subpoena.

### E.  Records or Documents Relevant to the Foregoing.

The relevant documents are identified, indexed and provided with this report.

### F.  Affidavits.

None.

### G.  Index of Document and Records:

See pages 6-7 herein.

### H.  Confidentiality.

All of the documents provided to the Court herein appear to be public records as that phrase is defined in New Mexico law.  *See e.g*. NMSA 1978, § 14-2-1 (1947, as amended).

## V.  APPLICABLE LAW.

As noted previously, Plaintiff's Complaint, Counts 1 and 2, do not state claims under the Eighth Amendment:

> The choice of amendment matters. Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment — all depending on where the defendant finds himself in the criminal justice system — and each carries with it a very different legal test. So, because the Fourth Amendment protects against "unreasonable searches and seizures" and pertains to the events leading up to and including an arrest of a citizen previously at liberty, excessive force claims arising during this period are generally reviewed under a relatively exacting "objective reasonableness" standard.  *See Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed.2d 443 (1989); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991) (holding that the Fourth Amendment applies until formal charges are brought or an arraignment is held because force used is

part of the "seizure"), abrogated on other grounds, *Johnson v. Jones*, 515 U.S. 304, 115 S. Ct. 2151, 132 L. Ed.2d 238 (1995).

*Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. Okla. 2010). If the Eight Amendment applied, the inquiry nevertheless would be whether the force applied was a part of a "good faith effort to maintain or restore discipline …" *Id*. The Eighth Amendment claims (Counts I and II) do not appear to state a claim and should be dismissed.

The due process claim, Count III, is closer to the mark. Three factors govern such claims: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor. *Roska v. Peterson,* 328 F.3d 1230, 1243 (10th Cir. 2003). *See also Walton v. Gomez (In re Estate of Booker),* 745 F.3d 405 (10th Cir. 2014). A determination of excess force under the Fourth Amendment requires a balancing of factors, among which are the severity of the crime, whether the suspect poses an immediate threat to the safety of others, and whether the suspect is actively resisting arrest or attempting to flee. *Graham v, Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the Tenth Circuit, use of a Taser is permissible when the subject is "actively resisting" arrest, when the suspect is "belligerent or hostile," when the suspect has been warned that the Taser will be applied and disregards the warning, and when the nature of the crime is proportional to the use of force. *Casey v. City of Federal Heights,* 509 F.3d 1278, 1285-86 (10th Cir. 2007)(in *Casey,* a man who had mistakenly taken a court file from the courthouse was returning it when he was grabbed, tackled, Tasered and then beaten by police officers). In *Booker,* the Tenth Circuit found that, for purposes of qualified immunity, it is clearly established that the use of force on a person who is not resisting and who is restrained in handcuffs is disproportionate to that which is necessary and considered constitutionally appropriate. In

*Booker,* the force applied was pressure on the back, a carotid/chokehold restraint, and a Taser was applied for three seconds longer than recommended.

Here, even though Plaintiff was handcuffed at some point in the lengthy struggle with the Espanola officers, he continued to resist arrest by refusing to be placed in the patrol car, repeatedly attempting to flee, and once placed in the patrol cart slid through to the other side and ran.  Plaintiff's assertion that it is "always improper" to apply a Taser to a person who is handcuffed misses the essential point: it is improper to apply a Taser to someone *who is not resisting.  Id.* at 428-29.  Moreover, his crime, breaking and entering an occupied home and refusing to leave when told that the police were on the way, raises serious concerns about the safety of the victims that merits use of force to assure the safety of the public.  *Casey*, 509 F.3d at 1285-86.  The Officer's actions were consistent with the Taser Use Policy of the employing agency.  ESP000149-152 (§ 73.1.13(D) and (F)).

Furthermore, of the three *Roska* factors described above, none are alleged in Plaintiff's Complaint.  Although Plaintiff repeatedly states that the relationship between the amount of force used and the need presented was excessive, he relies on his version of the facts (walking innocently down the street instead of breaking and entering a residence, behaving erratically and resisting arrest).  Second, Plaintiff appears to blame the use of the Taser for his medical episode, when in fact the evidence is more likely than not to show that the cause of his medical issues was an overdose of three illegal drugs.[1]  Finally, he has failed to allege or state facts from which one can infer malice on the part of the two officers; there are no allegations whatsoever on this point. *See also Draper v. Reynolds,* 369 F.3d 1270 (10th Cir. 2004)(Plaintiff was properly Tasered after Plaintiff was hostile, belligerent and uncooperative during a routine traffic stop, refused to

---

[1] The Court is not being asking to take this statement on faith; when the medical records are received and the cause of Plaintiff's medical difficulties is identified, Defendants will immediately supplement this report.

comply with instructions to retrieve his vehicle's documents, used profanity, moved around and paced in agitation and repeatedly yelled at the officer).

## VI.  CONCLUSION

Defendants will obtain medical records from Española EMS and Española Hospital and the names of the emergency medical personnel that responded and report back to the Court. Defendants will refrain from filing dispositive motions until this inquiry is complete.

**Respectfully submitted,**

**BASHAM & BASHAM P.C.**

*/s/ Mark A. Basham*
Mark A. Basham
Stephen C. Ross
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico  87505
505-988-4575 (telephone)
505-992-6170 (facsimile)
*mbasham@bbpcnm.com*
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of December, 2015, the foregoing Defendants' *Martinez* Report was mailed by prepaid First Class Mail to Plaintiff at the following address:

LEGAL MAIL
Miguel Lujan #66946
c/o/ Guadalupe Corrections Facility
P.O. Box 520
Santa Rosa, New Mexico  88435

*/s/ Mark A. Basham*
Mark A. Basham